UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:  CASE NO. 16-53016
Kersh Asset Holdings, LLC

DEBTOR  CHAPTER 11 PROCEEDING


## MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS


COMES NOW, Kersh Asset Holdings, LLC, Debtor in the above referenced case and files this Motion to Sell Property Free and Clear of Liens and in support thereof respectfully pleads the following:

DATE FILED:  December 31, 2016
DATE CONFIRMED:  no plan filed


1. Kersh Asset Holdings, LLC owns a building located at 3751 Andrews Highway, Odessa, Texas 79762. Described as: Lot 1, Block 35, Orchard Unit 35, Replat of a Portion of Tract 7, Orchard Addition, an Addition to the City of Odessa, Ector County, Texas according to the map or plat of record in Cabinet A, Page 52-A, Plat Records, Ector County, Texas, also known as 3751 Andrews Highway, Odessa, Texas 79762. The property consists of a car wash business.
2. On May 1, 2107 the court entered an order on a Motion to Lift the Automatic Stay allowing the Debtor until October 31, 2017 to sell the building. The Debtor had the building on the market for two years prior to filing the case. A real estate agent was hired soon after the case was filed and interest on the building seemed to be increasing.
3. However, when no movement had occurred by mid-April 2017 a decision was made to hold an auction to sell the property.
4. The auction firm of Hanley-Thomas Auction, Inc. DBA Tranzon Hanley, operated by Tom Hanley was hired to sell the property. Notice was sent out. Confience in the process was high see attached recap of advertising exhibit A An online auction was held during the week of August 26 – September 8, 2017. There were 5 bidders and the sale concluded with a winning bid of $181,000.00. The outstanding debt owed to Wells Fargo, according to the proof of claim, was $497,974.91.
5. The potential buyers indicated the property has several problems. There are newer car wash competitors in the area. In order to compete, as a car wash, the equipment would have to be completely replaced at significant cost. The lot is small so it would have limited appeal to other businesses and the building would have to be demolished at significant cost.
6. The Debtor requests the Court order the above referenced property to be released from the estate to the buyers free and clear of all liens. The proceeds will be

distributed as follows: the closing costs including any auction commissions and costs of sale as stated in the auction contract, attached as exhibit B will be paid first, the entire claims owed to the real estate taxing authorities, Ector County, including the court costs associated with this land, the balance of the proceeds shall be paid to Wells Fargo Bank.

Wherefore premises considered, the Debtor requests the Court grant an order allowing the sale Free and Clear of Liens pursuant to the results of the auction.

Respectfully submitted,

/s/ Heidi McLeod
Heidi McLeod  13764700
Heidi McLeod Law Office
3355 Cherry Ridge, Ste. 214
San Antonio, TX 78230
(210) 853-0092
(210) 853-0129 fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Motion to Sell Property was either mailed by first class mail or served by ECF notice on the following parties on this the October 6, 2017:

Kersh Asset Holdings, LLC
8308 Monument Oak
Fair Oaks Ranch, TX 78015

Allen DeBard
Langley & Banack, Inc.
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212-3166

Ector CAD
1301 E. 8th Street
Odessa, TX 79761

U S Trustee
615 E. Houston St., Ste. 533
San Antonio, TX 78205

Don Stecker
Linebarger Goggan Blair & Sampson, LLP
711 Navarro Street, Ste. 300
San Antonio, TX 78205

Wells Fargo Bank, N.A.
12200 Northwest Freeway
Houston, TX 77092

/s/ Heidi McLeod
Heidi McLeod

EXHIBIT "A"

# AUCTION UPDATE FOR SEPTEMBER 8, 2017



**Occurrences:**

- August 29th: PropertySend nationwide email blast
- August 31st: SendMyListing statewide email blast
- September 1st: Dallas Morning News ad ran; DallasNews.com online ad ran
- September 3rd: Odessa American ad ran; Midland Reporter ad ran
- September 5th: Email reminder to interested parties about inspection
- September 6th: Odessa American ad ran; Midland Reporter ad ran; Dallas Morning News ad ran in their "Briefing" edition; Wall street Journal ad ran in TX region edition and was picked up as filler in the national edition; Tom called interested parties about inspection

**Results:**

Below are Tranzon web site statistics of Web Page Views, Inquiries and PIP for the property.



LoopNet stats are as follows: 9,000 times displayed in search results; 103 times listing viewed from search results; 195 total listing views

PropertySend email stats are as follows: nationwide email blast; 1669 emails opened; 16 clicks

SendMyListing email stats are as follows: statewide email blast; 754 emails opened; 624 unique emails opened; 16 clicks

# AUCTION SALE EARNEST MONEY CONTRACT

1. **PARTIES**: ___Kersh Asset Holdings, LLC___ (Seller) agrees to sell and convey to ___Sally Mauriceville, Inc.___ (Buyer) and Buyer agrees to buy from Seller the Property described below.

2. **PROPERTY**: The property sold by this contract is real property situated in Ector County, located at ___3751 Andrews Highway, Odessa, Texas___ (*Address*) that is legally described as follows or as shown on attached Exhibit "A" (Property):

    See Exhibit "A"

3. **IMPROVEMENTS**: The Property is sold together with:
    A. all buildings, improvements and fixtures;
    B. all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
    C. Seller's interest in all leases, rents, and security deposits for all or part of the Property;
    D. Seller's interest in all licenses and permits related to the Property;
    E. Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
    F. the following personal property: ___None___

4. **CONTRACT PRICE**: At or before closing, Buyer will pay the following sales price for the Property:

    A. Auction Bid Price (or Sales Price in event of Negotiated Sale) $ ___165,000.00___

    B. Ten Percent (10%) Buyer's Premium......................$ ___16,500.00___

    C. **Total Contract Price**..........................................$ ___181,500.00___

5. **FINANCING**: Buyer will finance the portion of the sales price under Paragraph 3 as *follows (check all that apply)*:

    _X_ **All Cash**: Buyer will pay all cash at closing, no financing is required.

    ___ **Third Party Financing**: A third party note(s) in the total amount of ......$_____
    *This contract is not contingent upon Buyer obtaining third party financing.*

    ___ **Seller Financing**: The delivery of a promissory note and Deed of Trust from Buyer to Seller under the terms of the Financing Addendum attached hereto in the amount of $_____

    **If Buyer fails to close or failure of Buyer to obtain financing for any reason shall be an act of default and this Contract shall be subject to Seller's remedies set forth in Paragraph 16.**

6. **EARNEST MONEY**: Buyer shall deposit $ ___27,225.00___ as earnest money ___Basin Abstract & Title___ at ___4526 E. University, Suite 2A, Odessa, TX 79762___ (*address*) as escrow agent, upon execution of this contract by both parties. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

7. **TITLE POLICY, SURVEY, AND UCC SEARCH**:

    A. **Title Policy**:
    (1) Seller, at **X** Seller's ___ *(check one)* Buyer's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by _Basin Abstract & Title_ (the title company) in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
    (a) those restrictions and title exceptions shown on Schedule B of the title commitment furnished at Auction.
    (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

    B. **Survey**: Buyer may obtain a survey of the Property at Buyer's expense.

    C. ~~**UCC Search**: Within _____ days after the effective date hereof, Seller will furnish to Buyer at Buyer's expense a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.~~

8. **PROPERTY CONDITION**

    A. Present condition: Buyer accepts the Property in its present "as is" condition.

9. **BROKERS AND AUCTIONEER**: All obligations of the parties for payment of Auctioneer and Brokers' fees are contained in separate written agreements; however, the title company is authorized to disburse all funds payable to Auctioneer pursuant to those agreements from proceeds at closing

10. **CLOSING**:

    A. The closing of the sale will be on or before 25 days after Court approval (the closing date). If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 16.

    B. At closing, Seller will deliver, at Seller's expense a ___ General Warranty Deed **X** Special Warranty Deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 7 or other provisions of this contract. Seller must convey the property at closing:
    (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property, which will not be satisfied out of the sales price;
    (2) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to buyer under this contract.

    C. At closing, Buyer will:
    (1) pay the sales price in good funds acceptable to the escrow agent;
    (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
    (3) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

D.  Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

11. **POSSESSION**: Seller will deliver possession of the Property to Buyer on closing and funding in its present condition, ordinary wear and tear excepted. Any possession by buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

12. **SPECIAL PROVISIONS:**
In the event of a dispute concerning this Agreement or any payment that may be due hereunder, both Seller and Agent agree to use binding standard form arbitration as outlined by the American Arbitration Association as the method for resolving such a dispute and such arbitration will occur in Fort Worth, TX. This clause will supercede paragraph 17 of this agreement, only for the relationship between Buyer and Auctioneer/Broker.

13. **SALES EXPENSES**:

   A.  **Seller's Expenses**: Seller will pay for the following in cash at or before closing:
   (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
   (2) tax statements or certificates;
   (3) preparation of the deed and any bill of sale;
   (4) costs to record any documents to cure title objections that Seller must cure; and
   (5) other expenses that Seller will pay under other provisions of this contract.

   B.  **Buyer's Expenses**: Buyer will pay for the following in cash at or before closing:
   (1) all loan fees or expenses (for example: application fees, origination fees, discount fees, appraisal fees, assumption fees, recording fees, tax service fees, mortgagee title policy expenses, credit report fees, document preparation fees, interest expense that Buyer's lender requires Buyer to pay at closing, and other fees required by Buyer's lender);
   (2) preparation fees of any deed of trust;
   (3) recording fees for the deed and any deed of trust;
   (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
   (5) any escrow fee;
   (6) copy and delivery fees for delivery of the title commitment and related documents; and
   (7) other expenses that Buyer will pay under other provisions of this contract.

14. **PRORATIONS**: Taxes (real and personal) for the current year, interest, maintenance fees, assessments, dues and rents __X__ will ____ will not be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. Buyer shall pay the premium for a new insurance policy if desired. If taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.

15. **CASUALTY LOSS:**

   A.  If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Buyer may:
   (1) terminate this contract and the earnest money will be refunded to Buyer;
   (2) accept the Property in its damaged condition and accept an assignment of any insurance proceeds Seller is entitled to receive.

16. **DEFAULT**

    A. If either party fails to comply with this contract, that party is in default and the other party may:

        (1) enforce specific performance, or seek other relief as may be provided by law, or both; or
        (2) terminate this contract and receive the earnest money as liquidated damages, thereby releasing the parties from this contract.

17. **DISPUTE RESOLUTION**: The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator.

18. **ATTORNEY'S FEES**: If Buyer, Seller, Auctioneer, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph survives closing.

19. **ESCROW**:

    A. At closing, the earnest money must be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer.

    B. If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.

    C. If one party makes written demand for the earnest money, escrow agent will give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 30 days after the date escrow agent sent the demand to the other party, escrow agent may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the parties and escrow agent may pay the same to the creditors.

    D. If escrow agent complies with this Paragraph, each party hereby releases escrow agent from all claims related to the disbursal of the earnest money.

    E. Notices under this Paragraph must be sent by certified mail, return receipt requested. Notices to escrow agent are effective upon receipt by escrow agent.

20. **NOTICES**: All notices between the parties under this contract must be in writing and are effective when hand delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to:

    Buyer at: _10618 Sugar Place Ct._  Seller at: _8308 Monument Oak_
    _Sugar Land, TX 77498_              _Fair Oaks, TX 78015_
    Phone: _409-549-4915_               Phone: _____
    Fax: _____                 Fax: _____

21. **FEDERAL TAX REQUIREMENT**: If Seller is a "foreign person" as defined by applicable law, or if Seller fails to deliver at closing an affidavit that Seller is not a foreign person, then Buyer will withhold from the sales proceeds at closing an amount sufficient to comply with applicable tax law

SN

and deliver the amount withheld to the Internal Revenue Service (IRS), together with appropriate tax forms. IRS regulations require filing written reports if cash in excess of specified amounts is received in this transaction.

22. **AGREEMENT OF THE PARTIES**:

    A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns.
    B. This contract is to be construed in accordance with the laws of the State of Texas.
    C. This contract contains the entire agreement of the parties and may not be changed except by written agreement.
    D. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.
    E. Buyer **X** may ___ may not assign this contract by depositing **$2,500.00,** as additional independent consideration (the "Assignment Premium"), said consideration will be credited toward the purchase price but immediately payable to the Seller. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract, ONLY IF the assignee assumes, in writing, all of Buyer's obligations under this contract. Buyer may assign this contract without paying the Assignment Premium, ONLY IF Buyer transfers the contract to an entity that the Buyer has a controlling interest (the "Permitted Assign") provided the Permitted Assign assumes all obligations of Buyer under this contract.
    F. Addenda, which are part of this contract, are:
       **X** (1) Property Description Exhibit identified in Paragraph 2;
       ___ (2) Condominium Addendum;
       ___ (3) Property Condition Statement;
       ___ (4) Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards;
       ___ (5) Notice to Purchaser of Real Property in a Water District;
       ___ (6) Addendum for Coastal Area Property;
       ___ (7) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway; and
       **X** (8) Information About Brokerage Services
       ___ (9) Other_____

23. **TIME**: Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.

24. **EFFECTIVE DATE**: The effective date of this contract for the purpose of performance of all obligations is the date the escrow agent receipts this contract after all parties execute this contract.

25. **ADDITIONAL NOTICES**:

    A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

    B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate,



        bonded indebtedness, or standby fees of the district before final execution of this contract.

C.     If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

D.     If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

E.     If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

F.     If any apartments or other residential units are part of the Property and those units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract. Buyer acknowledges that Buyer has received the required 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or lead based paint inspection prior to signing this contract. Buyer further acknowledges that Seller is under no obligation to correct any lead based paint and/or lead based paint hazards and hereby accepts the Property in its "as-is" condition without warranty.

G.     Auctioneer and/or Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers.

**This is a legally binding contract. READ IT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

*Sally Nguyen*         09-15-2017
**Buyer**         **Date**         **Seller**         **Date**

**Buyer**         **Date**         **Seller**         **Date**

This Agreement contains information that is privileged and provided for the express purpose of communicating specific and proprietary information. It may not be duplicated or disclosed in whole or in part for any purpose other than evaluation. © 2003

Odessa_auction_sale_earnest_money_contract_Seller executed.docx
Page 6 of 8

bonded indebtedness, or standby fees of the district before final execution of this contract.

C. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

D. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

E. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

F. If any apartments or other residential units are part of the Property and those units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract. Buyer acknowledges that Buyer has received the required 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or lead based paint inspection prior to signing this contract. Buyer further acknowledges that Seller is under no obligation to correct any lead based paint and/or lead based paint hazards and hereby accepts the Property in its "as-is" condition without warranty.

G. Auctioneer and/or Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers.

This is a legally binding contract. READ IT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.

| Buyer _Sally Upchurch_ | Date 09-15-2017 | Seller _[signature]_ | Date 9/18/17 |

| Buyer | Date | Seller | Date |

This Agreement contains information that is privileged and provided for the express purpose of communicating specific and proprietary information. It may not be duplicated or disclosed in whole or in part for any purpose other than evaluation. © 2003

**ESCROW RECEIPT**

Escrow Agent acknowledges receipt of:

    A.    the contract on this day:_____ (effective date);

    B.    Deposit collected at signing of agreement initially held by Tranzon Hanley:

        in the amount of $_____

        in the form of _____

        on this date: _____

    C.    Additional earnest money deposit collected:

        in the amount of $_____

        in the form of _____

        on this date: _____

Escrow Agent

by:_____
        Signature

_____
        Printed Name

Address:   Basin Abstract & Title
               4526 E. University, Suite 2A
               Odessa, Texas 79762

Phone:    432-363-5231

Exhibit "A"

Legal description of land:
Lot 1, Block 35, Orchard Unit 35, Replat of a Portion of Tract 7, Orchard Addition, an Addition to the City of Odessa, Ector County, Texas, according to the map or plat of record in Cabinet A, Page 52-A, Plat Records, Ector County, Texas.